# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1762

_____

United States of America,　　　　　*

　　　　　　　　　　　　　　　　*

　　　　　　Appellee,　　　　　*

　　　　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　*

LaVonne Roach,　　　　　　　*

　　　　　　　　　　　　　　　　*

　　　　　　Appellant.　　　　　*

_____　　　　　　　　　*

　　　　　　　　　　　　　　　　*

No. 98-1767　　　　　　　　　*　Appeals from the United States

_____　　　　　　　　　*　District Court for the

　　　　　　　　　　　　　　　*　District of South Dakota.

United States of America,　　　　　*

　　　　　　　　　　　　　　　　*

　　　　　　Appellee,　　　　　*

　　　　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　*

Rodney Jackson,　　　　　　　*

　　　　　　　　　　　　　　　　*

　　　　　　Appellant.　　　　　*

_____　　　　　　　　　*

　　　　　　　　　　　　　　　　*

No. 98-1768　　　　　　　　　*

_____　　　　　　　　　*

　　　　　　　　　　　　　　　　*

United States of America,　　　　　*

```
                                    *
        Appellee,                   *
v.                                  *
                                    *
Kevin Eagle Tail,                   *
                                    *
        Appellant.                  *
```

_____

Submitted: October 19, 1998
Filed: December 22, 1998

_____

Before HANSEN, LAY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

LaVonne Roach, Rodney Jackson, and Kevin Eagle Tail appeal their convictions and sentences for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. They seek a new trial or resentencing because of claimed errors including admission of hearsay evidence, juror misconduct, improper jury instructions, and several sentencing issues. We affirm.

I.

A one count indictment charged appellants with a conspiracy to distribute methamphetamine in South Dakota. The government presented evidence at trial indicating that the conspiracy began no later than the summer of 1994 and continued until January 1996. Its organization changed over time. In the beginning Mario Osario controlled a distribution network which moved methamphetamine from California to Rapid City, South Dakota by way of Salt Lake City. Although Osario occasionally travelled to Rapid City and participated in transactions there, his associate Sergio Gutierrez was primarily responsible for the flow of drugs and money between the

states. At least monthly and sometimes weekly, Gutierrez delivered methamphetamine to LaVonne Roach, Osario's contact in Rapid City. Payment for the drugs was made by Roach to Gutierrez within a few days. Gutierrez made between 10 and 20 trips during this period, generally carrying between 3 and 10 pounds of methamphetamine per trip. On the return trips he carried money back to Osario.

Roach distributed the methamphetamine to a number of local users and dealers, including Rodney Jackson, Kevin Eagle Tail, Phyllis Fairbanks,[1] Patrick Peschong, Jeff Mousel, and others. Osario was often present when Mousel purchased methamphetamine from Roach. Clay Williamson and Toby Ness became involved in distributing the methamphetamine through Mousel. The dealers Roach supplied would turn to one another when she was unavailable or without drugs. The government presented evidence of transactions between Fairbanks and Eagle Tail, Mousel and Jackson, and Peschong and Eagle Tail.

The supply chain changed with the death of Osario on April 30, 1995. Law enforcement officers had arrested him on his way into Rapid City and seized 2.74 pounds of 99% pure methamphetamine. Osario agreed to cooperate by making a controlled delivery to Jeff Mousel. Instead of completing the transaction, however, he obtained a gun from Mousel and committed suicide shortly after their meeting. After Osario's death, Gutierrez developed another methamphetamine source and agreed to continue supplying Roach, but he also sold to other dealers in the Rapid City area, including Jackson and Eagle Tail. Gutierrez was arrested in January 1996.

After a three day trial, the jury found all three defendants guilty of conspiracy. The defendants filed a motion for new trial based on juror misconduct. The district court denied that motion and a subsequent motion to reconsider. At sentencing the court found that the conspiracy involved over 42 kilograms of methamphetamine,

---

[1]Phyllis Fairbanks later married Sergio Gutierrez, but we refer to her throughout this opinion as Fairbanks.

producing a base offense level of 38 under U.S. Sentencing Guidelines Manual § 2D1.1(c)[U.S.S.G.]. The court gave Roach a four level enhancement based on her leadership role in the conspiracy and Eagle Tail a two level enhancement for possession of a firearm. After taking into account their individual criminal histories, the district court sentenced Roach to 30 years imprisonment and both Jackson and Eagle Tail to 25 years.

Appellants appeal their convictions, the denial of their post-trial motion for a new trial, and their sentences. They claim that they are entitled to a new trial because of hearsay evidence, the court's refusal to issue a subpoena for certain bank records or to give a multiple conspiracy instruction, and juror misconduct. Appellants also claim the court erred in its drug quantity findings and in attributing drugs to them that Osario had intended to deliver to Mousel, and Rodney Jackson contends that it was wrong to consider two misdemeanor convictions in determining his criminal history.

II.

A.

Government witnesses testified at trial about many out of court statements relating to drug distribution.[2] There were statements attributed to Roach, Jackson, Eagle Tail, Mousel, Fairbanks, Peschong, Osario, Gutierrez, Wanda Edwards, Beaver Pacheco, Steve Cordova, Pat Tracy, and others. Appellants claim that this testimony was hearsay and that the government failed to establish that the declarants had participated in a conspiracy with each defendant and that every statement was in furtherance of a single conspiracy. They also claim the district court did not make sufficient findings in ruling on these issues. We review the trial court's evidentiary decisions for abuse of discretion and will only reverse if an error substantially

---

[2]The government offered this evidence through the testimony of Ness, Agent Robert Overturf, Deputy Lynn McLane, Peschong, Gutierrez, Terry Cuny, Fairbanks, and Williamson.

prejudiced the outcome.  See United States v. Goodson, 155 F.3d 963, 969 (8th Cir. 1998); Pittman v. Frazer, 129 F.3d 983, 989 (8th Cir. 1997).

The district court addressed the admissibility of coconspirator statements at several points during the proceedings, starting with an objection during the testimony of the first government witness.  When the prosecutor asked Toby Ness about statements by Jeff Mousel, defense counsel objected.  The court overruled the objection, saying:

> The objection has been made to the statement as hearsay. . . . [A] statement is not hearsay if made by a co-conspirator of a party during the course and in furtherance of the conspiracy [citation omitted].  To satisfy the requirements of [the exception], the government must demonstrate that, 1. A conspiracy existed, 2. That the defendants were part of the conspiracy; and 3. That the declaration was made in the course of and in furtherance of the conspiracy.  These elements must be proven . . . by a preponderance of the evidence. . . . [S]tatements by a co-conspirator identifying a fellow conspirator, are considered to be in furtherance of a conspiracy. . . .  Moreover, statements which reveal the existence and progress of the conspiracy are also in furtherance of a conspiracy.  The evidence so far does establish a conspiracy on the part of Mousel and Mr. Ness.  Statements which were made identifying others would be in furtherance of the conspiracy . . . .  The objection that testimony is hearsay is denied.

Soon thereafter, Roach's counsel requested and received a standing hearsay objection to cover every witness.[3]

The court again addressed the coconspirator exception during the testimony of Sergio Gutierrez after he referred to statements by Mario Osario.  Jackson's attorney

[3]At the beginning of trial, the court indicated that objections by one defendant would be considered an objection by all unless a party chose to opt out or add something to the objection.

-5-

objected, and the district court ruled that the evidence was admissible under 801(d)(2)(E).[4]

At the close of the government's case, the defendants moved for a mistrial or judgment of acquittal and Jackson's attorney argued that the government had not established the foundation for coconspirator statements because it had not shown that the evidence revealed a single conspiracy instead of multiple conspiracies. The court replied that there was "absolutely overwhelming" evidence of a conspiracy to distribute methamphetamine in Rapid City and specifically found that Ness, Peschong, Gutierrez, Fairbanks, Williamson, Mousel, and all three defendants were involved in this conspiracy.

Later, during the charge conference, the court stated, "[U]nder United States v. Bell, I have concluded all of what would otherwise be hearsay statements [sic] and admitted them under 801(d)(2)(E) as statements made in furtherance of the conspiracy, made by a co-conspirator, whether an indicted or nonindicted co-conspirator." The court went on to find that the conspiracy included Mousel, Williamson, Peschong, Ness, Gutierrez, and Osario. None of the parties requested further findings or made a record of the specific points of objection they now address on appeal.

An out of court statement by a coconspirator is not hearsay and may be introduced as an admission by a party opponent. Fed. R. Evid. 801(d)(2)(E). As the district court indicated, there are several requirements that a proponent must show. They are that a conspiracy existed, that the declarant and the defendant were both members of the conspiracy, and that the statement was made during the course of and

---

[4]The transcript reference is to Fed. R. Evid. 801(b)(2)(E). There is no such section in the rules. Rule 801(d)(2)(E) contains the coconspirator exception. It thus appears that either there was a typographical error in the transcript or that the court reporter heard (b) when the judge said (d).

in furtherance of the conspiracy.[5]  See United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978).  See also United States v. Jorgensen, 144 F.3d 550, 561-62 (8th Cir. 1998); United States v. Escobar, 50 F.3d 1414, 1423 (8th Cir. 1994).  The district court also correctly stated that the proponent must prove these requirements by a preponderance of the evidence.  See Bourjaily v. United States, 483 U.S. 171, 175 (1987); Jorgensen, 144 F.3d at 561; United States v. Roulette, 75 F.3d 418, 424 (8th Cir.), cert. denied, 117 S. Ct. 147 (1996).

A court may conditionally admit a challenged statement subject to later proof to satisfy the coconspirator rule and defer a final ruling on admissibility until after hearing the relevant evidence.  See Bell, 573 F.2d at 1044.  See also United States v. Coco, 926 F.2d 759, 761 (8th Cir. 1991); United States v. Williams, 604 F.2d 1102, 1112-13 (8th Cir. 1979).  The content of the proffered coconspirator statements may be considered in deciding whether a particular conspiracy has been established, see Bourjaily, 483 U.S. at 181, but such a statement "'cannot provide the sole evidentiary support for its own admissibility.'"  United States v. Garbett, 867 F.2d 1132, 1134 (8th Cir. 1989) (quoting Bourjaily, 483 U.S. at 184 (Stevens, J., concurring)).

Explicit rulings on whether the government has ultimately met its burden of establishing the required foundation for the challenged statements ensure a clear record for review, but a district court is permitted some flexibility in the manner in which it makes its rulings.  See, e.g., Roulette, 75 F.3d at 424-25.  The failure to make ultimate findings will only be reversible error if it substantially prejudices the rights of the parties.  See Jorgensen, 144 F.3d at 561-62; Roulette, 75 F.3d at 425.  The record must nevertheless reflect careful consideration of the foundational requirements in light of

_____

[5]Appellants claim that under the Confrontation Clause there must also be sufficient indicia of reliability to admit statements of an unavailable coconspirator, but the Supreme Court has explicitly rejected the need for a separate reliability inquiry.  See Bourjaily v. United States, 483 U.S. 171, 182-183 (1987) (Confrontation Clause requirements satisfied by coconspirator test).

the parties' objections and requests for rulings.  See Roulette, 75 F.3d at 424-25 & n.2.

At trial appellants failed to make specific objections of the type they now discuss on appeal.  Instead, they requested and relied upon a broad standing objection covering all witnesses and statements.  A standing objection may be appropriate to cover the same recurring issue, but it cannot protect a party where there are distinct foundation questions involved.  In such instances, an objecting party must alert the court to the particular points on which an objection is based.

The district court showed that it understood the required foundation for conspirator statements.  At the time of the first hearsay objection, the court clearly stated the requirements for admission of coconspirator statements and the burden of proof.  It also made findings then that Ness and Mousel were involved in a conspiracy and that certain statements were made in futherance of it.  It later made findings that the three defendants and Osario, Gutierrez, Peschong, Fairbanks, and Williamson were involved in a single conspiracy.  It overruled hearsay objections to statements qualifying under Rule 801(d)(2)(E) and rejected the contention that statements were hearsay because they were made in connection with multiple conspiracies.  No party objected to the court's final findings during the charge conference or asked for any amplification.  See Roulette, 75 F.3d at 425 & nn. 2-3.  Although it would have been helpful if the district court had made more detailed findings, our review of the record indicates that it substantially complied with the requirements of our case law.  See Roulette, 75 F.3d at 424.

The convicted parties now claim on appeal that approximately thirty-five hearsay statements were admitted, but study of the transcript reveals that the great majority were properly admitted under the coconspirator exception.  Twenty-seven of the statements were made by declarants specifically found by the trial court to be coconspirators and were made to customers or colleagues for the purpose of furthering the business of the conspiracy.  See Escobar, 50 F.3d at 1423; United States v.

Jackson, 67 F.3d 1359, 1364 (8th Cir. 1995), cert. denied, 517 U.S. 1192 (1996). The evidence supports the court's findings. Although the district court made no specific findings about three challenged statements of Edwards and Tracy, there is ample evidence in the record to show that they were members of the conspiracy and that the statements were made in its furtherance, including the content of the statements themselves which related to the drug distribution network. See Bourjaily, 483 U.S. at 181. Appellants assert that Terry Cuny repeated statements by unnamed persons, but it appears his testimony concerned what defendant Jackson had said about dealing to unnamed customers and was therefore properly admitted under the coconspirator exception.

Two of the challenged statements were admissible on other grounds. Fairbanks's testimony that Beaver Pacheco had asked her to sell drugs involved a verbal act; the government offered the statement not to prove its truth, but that it had been made. See Fed. R. Evid. 801(c) advisory committee's note on 1972 proposed rule (verbal acts outside hearsay definition); United States v. Robinson, 774 F.2d 261, 273 (8th Cir. 1985). Osario's post-arrest statement to agent Overturf about delivering methamphetamine to Mousel was not made in furtherance of the conspiracy, but it could have been admitted as being against penal interest under Fed. R. Evid. 804(b)(3). This statement did not directly implicate any of the appellants in any event, and its admission would have been harmless error at most, given the weight of evidence in the case. See United States v. White, 11 F.3d 1446, 1451 (8th Cir. 1993).

There appear to be several statements that should not have been admitted without more foundation. Fairbanks testified that Steve Cordova had told her Gutierrez was dealing for Osario; this appears to have been hearsay, but it added almost nothing to the case because Gutierrez himself had admitted that. Fairbanks also testified to two sets of statements by unnamed individuals, the first regarding purchases from Jackson and the second regarding a fight involving Osario, Roach, and Jackson. Coconspirator statements by anonymous declarants may sometimes be admissible, but here there was no evidence showing that these unnamed persons were actually part of the conspiracy.

Cf. United States v. Helmel, 769 F.2d 1306, 1313 (8th Cir.1985); United States v. Wilson, 532 F.2d 641, 645 (8th Cir. 1976). Given the weight of other evidence properly in the case, admission of these particular statements was no more than harmless error, however.

B.

Appellant Jackson also claims that the district court committed reversible error by admitting out of court statements by its witness Hope Red Leaf. After she answered preliminary questions at trial, she refused to say whether she had received any drugs from Jackson. She was eventually held in contempt, and the court declared her unavailable within the meaning of Fed. R. Evid. 804. The government then called Deputy McClane to testify about statements she had made in her interrogation. McClane testified that Red Leaf had admitted purchasing methamphetamine from Jackson in half-gram quantities on at least ten occasions and giving him stolen goods in exchange for drugs. Red Leaf also said that she had seen Jackson in possession of up to half an ounce of methamphetamine at a time, that he had told her that he was working with Osario to bring in large quantities of methamphetamine, and that he had asked his mother to deposit some of the money he had made.

The government contends that this testimony of McLane was admissible under 804(b)(3) because Red Leaf's statement was against her penal interest. Although a statement may fail to qualify as against interest if motivated by the desire to curry favor with the authorities, see United States v. Riley, 657 F.2d 1377, 1384 (8th Cir. 1981) (citing Fed. R. Evid. 804(b)(3), Advisory Committee Notes Exception (3)), the determination of credibility and motivation is generally within the discretion of the trial court. Red Leaf's confession that she had traded stolen goods for methamphetamine could qualify as a statement against interest, but the other statements not implicating her in illegal activity were not admissible under this exception. See Williamson v. United States, 512 U.S. 594, 601 (1994). Nevertheless, admission of this evidence was

-10-

harmless, since numerous witnesses testified about Jackson's involvement with the conspiracy and his drug sales and Jackson himself had admitted to some.

C.

Appellant Jackson claims the court erred in permitting Deputy McLane to corroborate testimony by prosecution witness Sergio Gutierrez. At trial Jackson's counsel had asked Gutierrez whether he had mentioned Jackson in an interview after his 1995 arrest. Gutierrez said he had. Counsel then asked whether he had also talked about Jackson after his January 1996 arrest. Gutierrez responded, "The first arrest I talk [sic] about him." The government later asked McLane to testify about Gutierrez's 1996 interview and what he had then said about Jackson. When the defense raised a hearsay objection, the prosecutor stated that the evidence was offered to rebut an inference of recent fabrication.

Federal Rule of Evidence 801(d)(1)(B) permits the use of prior consistent statements to rebut an express or implied charge of recent fabrication. A witness other than the declarant is permitted to testify to the prior statement. See United States v. Lanier, 578 F.2d 1246, 1256 (8th Cir. 1978). The prior statement must have been made before the alleged improper motive to fabricate. See Tome v. United States, 513 U.S. 150, 158 (1995). Evidence that Gutierrez's statements in his January 1996 interview was consistent with his trial testimony was relevant for rehabilitation since the desire to reduce his sentence on his drug charge could have given him a motive to lie at trial. The district court did not abuse its discretion in admitting McLane's testimony.

D.

Jackson's request for a new trial is also based on the denial of his attempt to subpoena his mother's bank records to show that she had not deposited money on his behalf. He sought the subpoena late in the trial after Deputy McLane had related Red Leaf's statement that Jackson asked his mother to hold some unspecified portion of his

-11-

drug proceeds. His mother was expected to testify that she had not held money for him during the relevant period, and Jackson sought the bank records to bolster her testimony.

A district court may, in its discretion, determine that the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case. See United States v. Kalter, 5 F.3d 1166, 1169 (8th Cir. 1993); Fed. R. Crim. P. 17(c). In this case, denial of the subpoena was well within the court's discretion. It was late in the trial, the evidence would have been cumulative, and it could not have been conclusive on the issue.

### E.

Appellants claim that they are entitled to a new trial based on the court's refusal to give a multiple conspiracy instruction. The defendants contend that Gutierrez initiated an independent conspiracy when he obtained a supply source separate from Osario and began selling to new buyers. They also say that the dealers competed among themselves and thus participated in more than one conspiracy.

If the evidence supports a single conspiracy, the failure to give a multiple conspiracy instruction is not reversible error. See United States v. Cabbell, 35 F.3d 1255, 1262 (8th Cir. 1994). A multiple conspiracy instruction is not required just because there are a number of sources and independent dealers if there was a shared objective to "sell large quantities of drugs." Cabbell, 35 F.3d at 1262. See also United States v. Lucht, 18 F.3d 541, 552 (8th Cir. 1994). A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions. See Cabbell, 35 F.3d at 1262; United States v. Adipietro, 983 F.2d 1468, 1475 (8th Cir. 1993). Dealers who compete with one another may be members of the same conspiracy. See United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993); United States v. Edwards, 945 F.2d 1387, 1393 (7th Cir. 1991).

As in United States v. McCarthy, 97 F.3d 1562, 1571 (8th Cir. 1996), cert. denied, 117 S. Ct. 1011, 1284 (1997), the participants in this conspiracy knew the drugs they distributed came through a "larger distribution framework already in place," knew some of the other members of the conspiracy, and all furthered the shared objective of distributing drugs received from a common source. They provided one another ongoing aid in promoting the conspiracy. Cf. United States v. North, 900 F.2d 131, 134 (8th Cir. 1990). Roach facilitated sales to Mousel and encouraged Fairbanks to purchase from Eagle Tail. Mousel purchased primarily from Roach, but also purchased resale quantities from Eagle Tail and Jackson. Peschong supplied drugs to, and received drugs from, both Eagle Tail and Roach. At one point Jackson attempted to re-establish a business relationship between Mousel and Osario after a falling out.

On the evidence in the record, the jury could have found an ongoing, facilitative relationship between parties who were aware of the scope of one another's activities. As the district court noted during the charge conference, a single overall conspiracy can be made up of a number of separate transactions and of a number of groups involved in separate crimes or acts. The court did not err by refusing to give a multiple conspiracy instruction.

III.

The appellants also appeal the denial of their post-trial motion for a new trial because of juror misconduct. After deliberating for about four hours, the jury sent the court a note saying it was unable to agree on a verdict. After consulting counsel, the court gave an Allen charge and told the jury to continue deliberating. The jurors returned with their verdicts after another hour of deliberation. They were polled individually and all affirmed that their verdict for each defendant was guilty.

Some time later, juror Cleo Gayton submitted an affidavit stating that she had been unwilling to convict the defendants but that the other jurors had pressured her into changing her vote. She claimed that one juror told her the judge would incarcerate her

-13-

if she failed to do her civic duty and vote to convict. She also claimed there were racial overtones in the jury room. Gayton was one of two Native American jurors, and for a time she was the only holdout against convicting the three Native American defendants. She said other jurors made references to her race and one said "[i]t was ten white people versus one Indian." She is a diabetic, and other jurors told her that she could get something to eat with them after a verdict was returned. The trial court denied the motion for new trial.

We review the denial of a motion for new trial based on alleged juror misconduct for abuse of discretion. See Wolff v. Brown, 128 F.3d 682, 686 (8th Cir. 1997). Federal Rule of Evidence 606(b) codifies the common law rule against use of juror testimony to impeach a verdict. The rule only allows jurors to testify about "extraneous prejudicial information" or "outside influence improperly brought to bear upon any juror." Fed. R. Evid. 606(b); see also Tanner v. United States, 483 U.S. 107, 121 (1987) (evidence inadmissible that jurors slept and consumed drugs and alcohol in course of trial and deliberations); United States v. Thomas, 946 F.2d 73, 75-76 (8th Cir. 1991). Because Gayton's allegations all concern either the jury's deliberations or casual conversation in the jury room, the district court did not abuse its discretion in denying the motion for a new trial.

IV.

Appellants also raise sentencing issues. They contend that they are entitled to resentencing because of erroneous findings on drug quantities, and Jackson claims that two misdemeanor convictions should not have been counted in his criminal history. We review a sentencing court's fact findings for clear error and may affirm on any ground supported by the record. See United States v. Williams, 109 F.3d 502, 509 (8th Cir. 1997).

The district court determined that the conspiracy involved a total of 42.15 kilograms of methamphetamine, producing a base offense level of 38 under U.S.S.G. § 2D1.1(c). It calculated this amount by including the amount of methamphetamine

seized from Osario when he was stopped near the Rapid City airport and the quantities it found established by Gutierrez's testimony about the frequency and volume of his deliveries to South Dakota.

Appellants argue that the court erred in attributing to each of them all the drugs transported by Osario and Gutierrez. They also claim that the evidence presented at trial was not specific enough to allow determination of precise drug quantities because Gutierrez gave numerical ranges for both the number of deliveries and the quantities in each delivery. Finally, they claim that the court erred in stating that the substance Osario carried on his last trip was "ice" methamphetamine.

The sentencing court can consider not only a defendant's own actions, but also the related activity of others, including all reasonably foreseeable acts and omissions in furtherance of jointly undertaken criminal activity. See U.S.S.G. § 1B1.3(a)(1)(B). In the context of a drug conspiracy, a defendant may be held accountable for all drug transactions within the scope of the conspiracy. See United States v. Grajales-Montoya, 117 F.3d 356, 365 (8th Cir.), cert. denied, 118 S. Ct. 446, 586 (1997); United States v. Granados, 962 F.2d 767, 770 (8th Cir. 1992). The trial court is entitled to estimate drug quantities where the amount actually seized fails to represent the scale of the offense if the preponderance of the evidence supports the quantities. See U.S.S.G.§ 2D1.1, comment. (n.12); United States v. Simmons, 964 F.2d 763, 771 (8th Cir. 1992). The court may make a specific numeric determination of quantity based on imprecise evidence, see United States v. Ayers, 138 F.3d 360, 363 (8th Cir.), cert. denied, 119 S. Ct. 219 (1998), so long as the record reflects a basis for the court's decision. See United States v. Randolph, 101 F.3d 607, 609 (8th Cir. 1996). The trial court was entitled to rely upon its familiarity with the evidence in determining drug quantities, whether or not its findings corresponded with the presentence investigation

report (PSR) recommendations. See United States v. Mills, 987 F.2d 1311, 1317 (8th Cir. 1993).[6]

The district court's findings of drug quantities were supported by the evidence. Because Roach, Jackson, Eagle Tail, Mousel, and Osario were members of the same conspiracy, the court properly attributed the quantity Osario was transporting at his death to each defendant in the sentencing calculation. Even though the quantity evidence was not all precise, the court was entitled to rely on it in making its estimation of the amount of drugs for which each appellant was responsible. Even though it was not established that Osario's last package was "ice" methamphetamine, its incorrect classification would not have affected any of the appellants' base offense levels.[7]

Finally, appellant Jackson claims that two of the three state court convictions used to raise his criminal history to category II were insufficiently documented. A district court's factual findings for sentencing must be supported by a preponderance of the evidence, and we reverse only for clear error. See United States v. Whatley, 133 F.3d 601, 606 (8th Cir.), cert. denied, 118 S. Ct. 2347, 2357 (1998); United States v. Hulshof, 23 F.3d 1470, 1472 (8th Cir. 1994). A sentencing court is not bound by the rules of evidence and may even consider hearsay in making its determinations. See U.S.S.G. § 6 A1.3(a). Although the local clerk's office no longer had a record of

---

[6]Although the court's findings for quantity were the same as those in the PSR, it declined to adopt other recommendations in the PSR, including an obstruction of justice enhancement for Jackson and weapon enhancements for Roach and Jackson.

[7]The government's expert witness, Dr. Jack Gaines, testified that the substance was not ice, but the PSR described it as ice because of its level of purity. Under the Sentencing Guidelines, only d-methamphetamine of greater than 80% purity qualifies as ice. See U.S.S.G. § 2D1.1(c), comment. (n.C). The PSR did not discuss whether the drugs were d-type or l-type methamphetamine. If the quantity found on Osario's body was only a methamphetamine mixture instead of ice methamphetamine, the total drug quantity would have been 30.98 kilograms. This would still be more than the required threshold of 30 kilograms for level 38. See U.S.S.G. § 2D1.1(c).

Jackson's 1988 petty theft conviction, that misdemeanor is contained in the records of the Rapid City Police Department and the South Dakota Division of Criminal Investigation. The clerk's office produced a computer record of his 1990 marijuana possession conviction but could not locate the supporting file. Absence of records underlying a conviction is not enough to create a presumption of invalidity. See Parke v. Raley, 506 U.S. 20, 30 (1992). Jackson does not claim that he was never convicted of these misdemeanors, and he has given us no reason to believe that the convictions were unconstitutionally obtained. He has not shown the district court erred in considering these convictions in computing his criminal history category.

V.

The record contains overwhelming evidence that appellants were involved in a large scale drug distribution conspiracy that imported over 30 kilograms of methamphetamine into the Rapid City area. Appellants have not shown reversible error at their trial or in the course of their sentencing proceedings or that they are entitled to a new trial or resentencing. The judgments are therefore affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-