# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2892

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of South Dakota. |
| James Victor McGilberry, Jr., | * |
| aka B.G., | * |
| | * |
| Appellant. | * |

_____

Submitted: May 14, 2010
Filed: September 3, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted James Victor McGilberry Jr. of conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. The district court[1] sentenced McGilberry to 151 months' imprisonment. On appeal, McGilberry argues that (1) the government presented insufficient evidence to convict him of conspiracy to distribute marijuana; (2) the government failed as a matter of law to prove the existence of the single conspiracy charged in the indictment; and (3) the

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

district court erred by permitting the government to introduce subsequent propensity evidence under Federal Rule of Evidence 404(b). We affirm.

## I. *Background*

McGilberry and Sonja Clemons both lived in Denver, Colorado, when McGilberry began supplying Clemons with small quantities of marijuana for distribution. In early 2003, McGilberry began providing larger quantities of marijuana to Clemons. Clemons received a shipment of ten pounds of marijuana that she, in turn, sold to Chris Larson of South Dakota. At trial, Clemons testified that she acted as a middleman for McGilberry in turning over one-pound marijuana bricks to Larson and then later to Ryan Skiff, who was Larson's associate from South Dakota. She further stated that she increased her sales of McGilberry's marijuana bricks and raised Skiff's allotment to 20 pounds at a time, then later to 50 pounds. By early fall 2003, the deliveries increased again, and Clemons gave Skiff 100 pounds approximately every other week; this continued for about one year. From the summer or late fall of 2004 to the fall of 2006, Clemons gave Skiff even larger monthly shipments of McGilberry's marijuana, including 150-to-200 pound shipments. Clemons estimated that she gave as much as 9,600 pounds of McGilberry's marijuana to Skiff. Clemons testified that she told McGilberry that the drugs were going to South Dakota and that they talked "quite a bit" about the people to whom they were providing bulk marijuana shipments. She discussed with McGilberry that it took six hours to transport the marijuana to South Dakota. McGilberry and Clemons used containers such as cereal boxes to conceal the money that would be exchanged during these large transactions. The money exchanges took place at either McGilberry's house or at Clemons's house in Denver.

Clemons also testified that she located sellers for McGilberry's marijuana. When she needed bricks of marijuana, Clemons would contact McGilberry, and he would retrieve the bricks from storage. Clemons testified that she and McGilberry would place the bricks of marijuana in duffel bags. Clemons also testified that she

talked often with McGilberry about her connections in South Dakota to whom she was providing marijuana.

In August 2006, Clemons locked her keys in her car while completing her last 200-pound delivery to Skiff. Clemons called McGilberry to help her unlock the car. After McGilberry failed to unlock the car, a locksmith eventually came and unlocked the vehicle. As the three of them waited to secure the load, Clemons told Skiff that her connection for brick marijuana was "B.G." (i.e. McGilberry). After learning Skiff's identity, McGilberry began providing bulk marijuana shipments directly to Skiff, thus by-passing the middleman Clemons.

After Skiff's arrest, Jim DeHaai, an intelligence analyst for the South Dakota Air National Guard on assignment to the Drug Enforcement Administration, testified that he analyzed a portion of Skiff's phone records. From that analysis, DeHaai determined that Skiff and Clemons had frequent telephone contact between April 16, 2006, and August 28, 2006. During this time period, there were about 150 phone contacts between Skiff and Clemons. DeHaai's analysis also revealed that on August 28, 2006, which was the time of the lock-out incident, Skiff received his first phone contact from McGilberry. From that date forward, calls between Skiff's and Clemons's phones drastically declined. However, from August 28, 2006, to April 24, 2007, McGilberry called Skiff 25 times, and Skiff called McGilberry 69 times. Additionally, at the time of his arrest in Denver, McGilberry was found with a compressed marijuana brick and $776.

A jury convicted McGilberry of conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. McGilberry's presentence investigation report (PSR) determined that the drug quantity applicable to McGilberry was 1,338.12 kilograms of marijuana. This established a base offense level of 32. With a criminal history category of III, McGilberry's advisory Guidelines range was 151 to 188 months' imprisonment. McGilberry requested the mandatory minimum sentence of

120 months. He argued that he should be granted a lower, non-Guidelines sentence because he was not the ultimate source of the marijuana. The district court sentenced McGilberry to 151 months' imprisonment.

## II. *Discussion*
### A. *Sufficiency of the Evidence*

On appeal, McGilberry argues that the verdict is not supported by sufficient evidence that he conspired to distribute marijuana. First, McGilberry maintains that accepting the testimony of the government's two drug dealing witnesses—Clemons and Skiff—yields nothing more than buyer-seller relationships between McGilberry and both Clemons and Skiff. McGilberry argues that proof of a buyer-seller relationship, without more, is insufficient to prove participation in a conspiracy. *See United States v. Bewig*, 354 F.3d 731, 735 (8th Cir. 2003) ("[Defendant] argues that a seller can never be a member of a conspiracy when his relationship to the alleged conspiracy is only that of a seller, and that a second agreement, beyond the sales transaction, is needed to support a conspiracy conviction"). Second, McGilberry argues that the government failed to introduce any evidence to establish the date of the indictment. McGilberry contends that because the government did not introduce evidence establishing the date of the indictment, the government necessarily failed to present the jury with evidence that an offense occurred at a time reasonably near the date alleged in the indictment.

"We review de novo the sufficiency of the evidence to sustain a conviction, examining the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." *United States v. Montano*, 506 F.3d 1128, 1132 (8th Cir. 2007). "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." *United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc). "The

-4-

verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Molsbarger*, 551 F.3d 809, 812 (8th Cir. 2009) (internal quotations and citation omitted).

To support a conspiracy conviction, the government must demonstrate that (1) a conspiracy existed for an illegal purpose; (2) McGilberry knew of the conspiracy; and (3) McGilberry intentionally joined the conspiracy. *United States v. Becker*, 534 F.3d 952, 957 (8th Cir. 2008). Examining the evidence in the light most favorable to the jury verdict, we hold that the government established each element of the charged conspiracy. The testimony of Clemons and Skiff, if believed, established more than a mere buyer-seller relationship between McGilberry and these witnesses. This testimony indicates that McGilberry took an active role in organizing, directing, and completing several large scale marijuana transactions. The testimony further reflects that McGilberry participated in the conspiracy and that he was a central figure in executing the conspiratorial acts. For example, the testimony reflects that McGilberry (1) retrieved marijuana and supplied it directly to Clemons; (2) discussed with Clemons her connections in South Dakota to whom she was providing marijuana; (3) received a call from Clemons when she locked marijuana in her car; and (4) chose his retail salesmen as indicated by his choosing to deal directly with Skiff. The jury was entitled to credit Clemons's and Skiff's testimony. "As we have repeatedly held, a jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony." *United States v. Buchanan*, 604 F.3d 517, 528–29 (8th Cir. 2010) (internal quotations and citations omitted).

Next, McGilberry is incorrect in asserting that the government failed to introduce any evidence to establish the date of the indictment. The superceding indictment itself reflects a stamp that reads: "Filed JAN 21 2009." We find that the government presented sufficient evidence to establish the date of the indictment.

B. *Single Conspiracy v. Multiple Conspiracies*

Next, McGilberry argues that the government failed as a matter of law to prove the existence of the single conspiracy alleged in the indictment. Specifically, McGilberry asserts that the government, at most, established mere buyer-seller relationships between him and his alleged coconspirators. McGilberry asserts that because the case involved multiple transactions, if the government proved anything it proved multiple conspiracies. Accordingly, McGilberry asserts that a variance exists between the indictment and the proof offered at trial and that the indictment at issue in this case possesses all of the flaws cautioned against in *United States v. Barth*, 424 F.3d 752 (8th Cir. 2005).

> A variance infringes a defendant's substantial rights when: (1) the defendant could not reasonably have anticipated from the indictment the evidence to be presented against him; (2) the indictment is so vague that there is a possibility of subsequent prosecution for the same offense; or (3) the defendant was prejudiced by a "spillover" of evidence from one conspiracy to another.

*Id*. at 759 (internal quotations and citation omitted).

"Whether a variance exists, and, if so, whether that variance prejudiced [McGilberry], are questions of law that we review de novo." *United States v. Stuckey*, 220 F.3d 976, 979 (8th Cir. 2000). "We review allegations of a variance for harmless error, and reversal is warranted only if the variance infringed a defendant's substantial rights." *Barth*, 424 F.3d at 759 (internal quotation, alteration, and citations omitted). "Whether there are multiple conspiracies or a single one is question of fact for the jury to decide." *United States v. Pullman*, 187 F.3d 816, 821 (8th Cir. 1999) "We look to the totality of the circumstances to determine whether a single conspiracy or multiple conspiracies existed and give the verdict the benefit of all reasonable inferences that can be drawn from the evidence." *Id*.

-6-

As discussed *supra* Part II. A, we have concluded that the government established that McGilberry participated in a conspiracy to distribute marijuana and not mere buy-sell transactions. The government proved the existence of at least one conspiracy involving Clemons, Skiff, and others. Here, McGilberry extends the logic of his first argument that multiple transactions do not establish a conspiracy with an alternative argument. This alternative argument suggests that if mere multiple transactions are wrongly considered sufficient to have established a conspiracy, then given the number of transactions and participants the government proved there must perforce be proof of multiple conspiracies. Consequently, if multiple conspiracies are shown, then the government's proof has established a different crime than what was charged in the indictment resulting in a variance. McGilberry contends that if the government's proof could have established the existence of one conspiracy it had to also establish the existence of multiple conspiracies. We reject McGilberry's argument as founded on the false premise that the government's multiple transaction evidence could establish only either multiple transactions or multiple conspiracies. The evidence also could have established an extensive single conspiracy in which McGilberry largely insulated himself from the street sellers of his bulk transactions with intermediaries by having middlemen like Larson, Clemons, and Skiff. McGilberry has not shown the jury did not conclude the latter.

First, "the jury determined that a single conspiracy existed after being properly instructed that they were not to convict unless the government proved the single conspiracy alleged in the indictment." *Id*. And we give their verdict the benefit of all reasonable inferences. *Montano*, 506 F.3d at 1132. Furthermore, "[a] single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998). Furthermore, "[a] single overall conspiracy can be made up of a number of separate transactions and of a number of groups involved in separate crimes or acts." *Id*. Based on the testimony presented in this case, we conclude that the jury could have found an "ongoing,

-7-

facilitative relationship between parties" who were engaging in a single overarching conspiracy even though the conspiracy may have been comprised of multiple disparate transactions. *Id*. Because we find that no variance existed between the indictment and the government's proof, McGilberry's argument that his substantial rights were violated is mooted.

### C. *Rule 404(b) Subsequent Propensity Evidence*

Finally, McGilberry argues that the trial court erred by permitting the government to introduce subsequent propensity evidence under Federal Rule of Evidence 404(b). McGilberry objected to the trial court's admission of evidence that McGilberry, when arrested, possessed three ounces of marijuana in a lunch box along with $776. First, McGilberry contends that, contrary to the district court's implication, neither knowledge nor mistake was at issue in this case. Thus, McGilberry submits that this admitted evidence tended only to show his propensity to deal in narcotics. Second, he argues that subsequent possession of marijuana and cash a year and a half after the alleged conspiracy ended is simply not probative of his earlier knowledge or lack of mistake.

"We review admission of [404(b)] evidence for abuse of discretion and will reverse only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct." *United States v. Walker*, 428 F.3d 1165, 1169 (8th Cir. 2005). "Admissibility of 404(b) evidence is governed by four factors: the evidence must be 1) relevant to a material issue; 2) proven by a preponderance of the evidence; 3) of greater probative value than prejudicial effect; and 4) similar in kind and close in time to a charged offense." *Id*. "There is no absolute rule for the number of years that can separate evidence of offenses admitted under Rule 404(b). Instead we examine the facts and circumstances of each case and apply a reasonableness standard." *United States v. Thomas*, 398 F.3d 1058, 1063 (8th Cir. 2005).

McGilberry's arguments are again unpersuasive. Rule 404(b) provides: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for purposes, such as proof of . . . knowledge . . . or absence of mistake or accident. . . ." The district court stated that the marijuana and cash found on McGilberry's person at the time of his arrest could be admitted to show "an absence of mistake or accident that the defendant had knowledge." The court further stated that it found the marijuana to be "consistent with the same type of marijuana that was sold that was alleged during the conspiracy, and it's a quantity that's large enough that may be consistent with distribution amounts, and it's packaged similar to the weight that Ms. Clemons indicated that the drugs were packaged." In *United States v. Thomas*, we stated that "[t]he terms of Rule 404(b) draw no distinction between prior and subsequent acts that would support different analyses, . . . nor have we applied different analyses to evaluate the admission of prior and subsequent acts." 593 F.3d 752, 759 (8th Cir. 2010) (internal citation omitted). Furthermore, in the earlier *Thomas* decision, we held that prior convictions based on acts committed some four and a half and nine years before the appellant's arrest were admissible given the similarities between the prior convictions and the offense then at issue. 398 F.3d at 1063. *Thomas* also stated that "[w]e have previously approved the admission of other crimes evidence for acts committed up to 13 years before the crime charged." *Id*. We find that, although neither knowledge nor mistake was explicitly at issue in this case, given the similarities between the marijuana recovered and the marijuana involved in the conspiracy, and the large amount of cash found on McGilberry's person with a distribution quantity of drugs, the district court did not act unreasonably in accepting this evidence after a one-and-a-half year time lapse. McGilberry seems to imply that because the government did not explicitly raise knowledge or mistake, these issues are inappropriate for the district court's consideration. However, McGilberry offers no support for this contention and it is contradicted by the plain language of Rule 404(b).

Moreover, the other three *Walker*, *supra*, factors were satisfied in this case. First, the discovered marijuana was relevant to a material issue because it was the same type of marijuana involved in the conspiracy. Second, the existence of the marijuana was proven by a preponderance of the evidence. Finally, in light of the other evidence presented at trial, the money and marijuana's unfair prejudicial effect was not greater than its probative value.

In any event, even if the district court erred by allowing this evidence, any error was harmless in light of the overwhelming evidence of McGilberry's guilt. *United States v. Parish*, 606 F.3d 480, 488 (8th Cir. 2010) (holding any possible error resulting from the admission of testimony harmless because "the rest of the evidence against [defendant] was overwhelming").

### III. *Conclusion*

The judgment of the district court is affirmed.

_____