# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

SHAWN LEWIS EWING,
            *Defendant-Appellant.*

No. 10-50131

D.C. No.
2:09-cr-00003-
GHK-1

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
November 1, 2010—Pasadena, California

Filed April 7, 2011

Before: Harry Pregerson, Kenneth F. Ripple,* and
Susan P. Graber, Circuit Judges.

Opinion by Judge Ripple

---

*The Honorable Kenneth F. Ripple, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

**COUNSEL**

Xochitl D. Arteaga, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

**OPINION**

RIPPLE, Circuit Judge:

Shawn Lewis Ewing was charged in the United States District Court for the Central District of California with counterfeiting currency and possessing with the intent to use counterfeit currency, in violation of 18 U.S.C. §§ 471 and 474. Mr. Ewing filed a motion to suppress evidence against him. He contended that the arresting officer's examination of folded bills, partially concealed in the weatherstripping of the car in which he was a passenger, violated his rights under the Fourth Amendment. The district court denied the motion; it held that the officer had probable cause to remove and examine the bills. Mr. Ewing subsequently entered a plea of guilty conditional on the resolution of his appeal of the motion to suppress.

We affirm the judgment of the district court. The evidence establishes that the officer had probable cause to search the car and to examine suspected contraband within it. The officer identified several interrelated factors that, under the totality of the circumstances, created a fair probability that a search of the car would yield evidence of a crime. Moreover, because the bills fell within the parameters of the justification for the search, Mr. Ewing has not established that the officer required independent probable cause to unfold them.

**I**

**BACKGROUND**

**A.  Facts**

On December 18, 2008, Los Angeles Sheriff's Department Deputy Jeffrey Doke stopped a car with an expired registration. Three individuals were inside the vehicle: Sandra Vera, the owner and driver of the car; Michael Smith, who sat in the

passenger seat; and Mr. Ewing, who sat in the backseat. As the car pulled over, Mr. Ewing told Smith that he possessed several counterfeit $20 bills on his person. Mr. Ewing then gave the bills to Smith who stuffed them, folded, into the weatherstripping between the right front passenger door and window.

When he approached the car, Deputy Doke first spoke with Vera, then asked all of the occupants whether any of them were on probation or parole. Smith replied, "quickly and loudly," R.30-2 at 6, that he was on parole. Deputy Doke walked around to the passenger side of the car to speak with Smith who, in response to the officer's further question, told the officer that a condition of his release was that he allow law enforcement personnel to search his person for contraband. As Deputy Doke conversed with Smith, he noticed the folded bills, which were still partially visible in their hiding place. He removed the bills and then asked Smith why there was money sticking out of the window. When Smith replied that he did not know, Deputy Doke unfolded and examined the bills. During this time, neither Vera nor Mr. Ewing claimed ownership of the money or offered to explain the reason for its presence in the window.

After a brief examination, Deputy Doke observed that the serial numbers on some of the bills were identical. He then asked the occupants of the car if any of them knew that the bills were counterfeit. They all replied in the negative, and Deputy Doke detained them. Once detained, Smith told the officer that he had seen Mr. Ewing producing counterfeit currency in a hotel room and recounted his efforts to hide the bills in the window.

With Vera's consent, Deputy Doke then searched the car and its contents. He discovered two suitcases, which Vera indicated belonged to Mr. Ewing. Deputy Doke obtained Mr. Ewing's consent to search the suitcases, which contained, among other things, printing equipment, a paper cutter and

more counterfeit bills. After being read his *Miranda* rights, Mr. Ewing confessed that he had produced and used the bills. Mr. Ewing was arrested and charged with production of, and possession with intent to use, counterfeit United States currency in violation of federal law.[1]

## B.   Proceedings Before the District Court

Mr. Ewing moved to suppress evidence procured as a result of the removal and examination of the folded bills. He contended that Deputy Doke had committed an unreasonable search and seizure in violation of the Fourth Amendment because he lacked probable cause to believe that the money was connected to criminal activity.

In opposition to the motion, the Government submitted a declaration in which Deputy Doke stated that he knew from training and experience that drug couriers often hide contraband, such as the cash proceeds of drug sales, "in door panels and in hidden compartments in cars." Deputy Doke also stated that, when he first spoke to Smith, Smith "appeared nervous," "appeared to have a difficult time keeping still" and "spoke in fast and rapid speech." From these indicia, Deputy Doke inferred that Smith was "under the influence of a stimulant."[2]

---

[1]*See* 18 U.S.C. § 471 ("Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both."); *id.* § 474(a) ("Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same . . . [i]s guilty of a class B felony.").

[2]Although Deputy Doke stated in his declaration that Smith had bloodshot eyes, the officer admitted on cross-examination that he did not observe this further indication of intoxication until after he had removed and examined the bills. This admission is consistent with his initial description of events in the arrest report.

Deputy Doke described the grounds for his examination of the money as follows:

> When I saw the money sticking out from the window area of the door, where money ordinarily is not placed, I was suspicious that someone was trying to avoid its detection. The location of the money, together with the fact that there was a parolee present, and that Mr. Smith appeared to be under the influence of a drug, added to my suspicion that potential criminal activity was occurring.

*Id.* ¶ 7. He also explained, "I asked about the money at the same time as I was pulling it out, and the fact that nobody claimed ownership of the cash raised further suspicion that there was potential criminal activity occurring." *Id.* ¶ 9. On the basis of these suspicions, the Government contended, Deputy Doke had probable cause to search the car and to examine the money. The Government also challenged Mr. Ewing's standing to contest the search.

After a brief evidentiary hearing in which Deputy Doke was cross-examined and Mr. Ewing testified, the district court denied the motion. The district court ruled that Mr. Ewing did have standing to contest the search of his money. Nevertheless, under the totality of the circumstances, the district court found that Deputy Doke's examination of the bills was supported by probable cause.

Prior to the cross-examination of Deputy Doke, the district court had concluded that "the officer was completely justified in seizing the money to look at it and examine it because he believed he was dealing with drug proceeds and there were many indications that that's what the money was." R.70 at 6. After the cross-examination, the court found that Deputy Doke's testimony established fewer suspicious factors than were contained in the declaration, but it nevertheless concluded that the seizure was constitutional. Although the bills

did not turn out to be drug proceeds, Deputy Doke "saw sufficient symptoms of Mr. Smith being under the influence of narcotics" to believe reasonably that they were, and this belief established probable cause. *Id.* at 30. Accordingly, the district court denied Mr. Ewing's motion to suppress the evidence.

On September 25, 2009, Mr. Ewing entered a plea of guilty to the charges against him, but conditioned his plea on the resolution of an appeal of the denial of his motion to suppress. The district court entered a judgment of guilty on both counts and, on March 1, 2010, sentenced Mr. Ewing to eighteen months in prison and five years of supervised release. This appeal followed.

## II

## DISCUSSION

### A. Standard of Review

We review de novo the district court's denial of Mr. Ewing's motion to suppress. *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). The district court's "underlying factual findings are reviewed for clear error." *United States v. Davis*, 530 F.3d 1069, 1077 (9th Cir. 2008).

### B. Standing

We begin with the Government's belated assertion at oral argument that the district court erred in determining that Mr. Ewing had standing to contest the search. The district court held, and Mr. Ewing concedes on appeal, that he did not have standing with respect to the search of the car because he was not the owner of the car and did not have any privacy interest in it. *See United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005). Under most circumstances, this concession would be the end of the matter. *See United States v. Thomas*, 447 F.3d 1191, 1199 & n.9 (9th Cir. 2006). Mr. Ewing asserts, how-

ever, that he has standing to contest the removal, unfolding and examination of the money because he expected to get the money back and thus had a reasonable expectation of privacy in the information concealed inside the folded bills. The district court agreed with Mr. Ewing, and the Government did not dispute this determination in its brief before us. At oral argument and in a later filing, however, the Government decided to resurrect the standing issue, which it contends has not been waived. According to the Government, standing is a threshold jurisdictional issue that can be raised at any time.

Although *Article III* standing is jurisdictional, the Government has misapprehended the nature of *Fourth Amendment* standing, which is analytically distinct from "case or controversy" standing in the Article III context. In *Rakas v. Illinois*, 439 U.S. 128, 140 (1978), the Supreme Court explained that standing to contest a search or seizure "is more properly placed within the purview of substantive Fourth Amendment law than within that of [Article III] standing." *See also United States v. Garcia-Villalba*, 585 F.3d 1223, 1234 n.6 (9th Cir. 2009) (explaining that Fourth Amendment standing is not jurisdictional and may be bypassed in favor of the merits). Since *Rakas*, we repeatedly have held that Fourth Amendment standing is not a jurisdictional issue and therefore can be waived. *See, e.g.*, *United States v. Huggins*, 299 F.3d 1039, 1050 n.15 (9th Cir. 2002); *United States v. Wanless*, 882 F.2d 1459, 1462 (9th Cir. 1989).

Here, the Government did not contest the district court's standing determination until oral argument. Its failure to brief the issue results in waiver. *See United States v. Riley*, 335 F.3d 919, 930 n.6 (9th Cir. 2003) (holding that an argument first raised by the Government at oral argument "is waived on appeal").

## C. Probable Cause

Mr. Ewing contends that, when Deputy Doke unfolded the bills and examined their serial numbers, he conducted a sec-

ond search, which, for Fourth Amendment purposes, was distinct from the search of the car and therefore demanded an independent showing of probable cause. This separate search, Mr. Ewing believes, was not supported by probable cause because there was no reason to suspect that unfolding the bills would yield evidence of drug trafficking.

For support, Mr. Ewing relies on *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, the Supreme Court held that a police officer violated the Fourth Amendment when he moved stereo equipment to examine its serial numbers during a warrantless search of an apartment. The police were responding to a report that a shot had been fired inside the apartment and that a bullet from the gun had gone through the floor and had struck a man in the apartment below. The officer's warrantless entry was justified by the exigent circumstances created by the gunshot. While inside the dwelling, the officer noticed some expensive stereo equipment, which looked out of place in the poorly furnished and dilapidated apartment. The officer moved the equipment to record its serial numbers and subsequently discovered that the equipment had been stolen during an armed robbery.

The Supreme Court held that, even though the officer was legitimately inside the house and even though the equipment was in plain view, when the officer moved the equipment, he committed a new search that required independent justification: "[T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." *Id.* at 325. Inspecting the apartment for stolen property was unconnected to investigating the gunshot, and the exigent circumstances thus did not permit moving the equipment. *Id.* at 326. It therefore was necessary for the officer to have probable cause to believe that the equipment was stolen before he could examine it; because the Government conceded that the officer had only a reason-

able suspicion, the search was unconstitutional. *See id.* at 326-28.

Despite its unusual factual circumstances, *Hicks* does not state a particularly novel principle of law. The proposition that the justification for a search defines its permissible scope is well established. For example, if a law enforcement officer has probable cause to search a vehicle, that probable cause extends to all contents in the vehicle that could be connected to the suspected criminal activity. *See Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) ("When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one."); *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

**[1]** *Hicks* holds that a law enforcement officer may examine an item unrelated to the initial object of a search if the item is in plain view and if the officer has probable cause to believe that the item is connected to criminal activity. 480 U.S. at 326. The case does not set forth a rule that police officers must justify, on a molecular level, the manner in which they examine every object within the scope of a valid search. Therefore, the central question facing us is not whether unfolding the bills produced a new invasion of Mr. Ewing's privacy interest but, instead, whether the justification for the search of the car extended to the bills.

**[2]** The Fourth Amendment requires, as a general matter, that police procure a warrant before searching or seizing property. *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 1716 (2009). "Under the automobile exception to the warrant requirement," however, "police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime," *Brooks*, 610 F.3d

at 1193, and "the vehicle is readily mobile," *Davis*, 530 F.3d at 1084 (internal quotation marks omitted). An officer has probable cause "when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation marks omitted).

**[3]** We agree with the district court that the circumstances presented a fair probability that the money was involved in drug trafficking and that a search of Vera's car would have revealed evidence of a crime. Deputy Doke observed several factors that led him to suspect that the bills were connected to an illegal drug transaction. First, Smith was nervous, spoke loudly and rapidly and had "a difficult time keeping still," R.32-2 ¶ 6, which indicated to Deputy Doke that Smith was under the influence of a stimulant.[3] Second, Smith was a parolee. Third, the money was located in a place that suggested an effort to conceal its presence and called to Deputy Doke's mind the door compartments and other hiding places used by drug couriers to transport contraband and cash.[4]

Mr. Ewing correctly asserts that nervousness by itself does not establish probable cause. *See Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005). However, nervousness in this instance was not the sole factor suggesting criminal activity,

---

[3] Smith was in fact under the influence of methamphetamine, an illegal stimulant. After Deputy Doke detained him, Smith failed several drug recognition tests and admitted that he had "smoked 'meth' earlier in the day." R.30-2 at 8.

[4] The Government also suggests that the fact that no one responded to Deputy Doke's question about the money raised justifiable suspicions. According to the arrest report, however, Deputy Doke asked Smith about the money only after he had removed it from the window, and the district court credited this version of events. Thus, although the silence of the car's occupants may be suspicious, it cannot be considered as a factor supporting probable cause to search the car or seize the money, which occurred as soon as Deputy Doke removed the bills from their hiding place.

but instead was a contributing factor—alongside compulsive movement and loud and rapid speech—to an inference of illegal stimulant use.[5] This suspicion of stimulant use was, in turn, one of the factors justifying the inference that the car was part of a drug-trafficking operation.

Mr. Ewing also contends that, because Deputy Doke did not know the nature of Smith's prior conviction, the mere knowledge that he was on parole did not establish probable cause to search the car. Whatever the merits of this contention on its own, *see Greenstreet v. Cnty. of San Bernardino*, 41 F.3d 1306, 1309-10 (9th Cir. 1994) (holding that police officers lacked probable cause to search a house when there was "no connection whatsoever between [a parolee's] criminal history and Plaintiffs' residence except . . . that [the parolee] was seen there"), Smith's status as a parolee, considered in conjunction with his appearance of being under the influence of a stimulant, helps to establish a fair probability that a search of the car would yield evidence of contraband.

Moreover, both Smith's apparent intoxication and his parolee status must be viewed alongside the fact that Deputy Doke observed a number of folded-up $20 bills stuffed between the passenger door and the window. The weatherstripping of a car window is a very odd place to store money. Deputy Doke's training and experience alerted him to the possibility that, just as drug couriers hide contraband and cash in door panels and other hidden compartments to evade detection, so too might a drug courier attempt to conceal money in the space between a car door and its window. *See United States v. Sanchez-Lopez*, 879 F.2d 541, 555-56 (9th Cir. 1989) (holding that the discovery of a hidden cut-out in a glove compartment and testimony that "narcotics traffickers often use false compartments to smuggle drugs" was "relevant to establish a

---

[5]The district court found that Deputy Doke did not notice other indicia of Smith's intoxication—bloodshot eyes and profuse sweating—until after he had examined the bills and detained the car's occupants.

connection" with a drug trafficking conspiracy); *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1236 (9th Cir. 1988) (holding in a civil forfeiture proceeding that a defendant's attempt to conceal money is "a relevant fact" in establishing probable cause that the money was tied to drug trafficking).[6]

**[4]** Assessed in its totality, the evidence supports the district court's probable cause determination. Deputy Doke was confronted with a parolee who probably was using illegal drugs and who seemed to have hidden several folded-up $20 bills in the door next to him. Deputy Doke made a reasonable inference—possibly the most reasonable inference under the circumstances—that the likely explanation for the money's location was that the bills were the cash proceeds of a drug sale.[7] *See Davis*, 530 F.3d at 1084 (stating that "[p]robable cause determinations may be based in part on reasonable inferences" (citing *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (en banc))). To be sure, it turned out that the bills were not drug proceeds.[8] Yet, the totality of the cir-

[6]Courts frequently have noted the use of hidden compartments in drug trafficking operations. *See, e.g.*, *United States v. Campos*, 541 F.3d 735, 740 (7th Cir. 2008); *United States v. González*, 363 F.3d 15, 19 (1st Cir. 2004) (per curiam). Mr. Ewing nevertheless maintains that there is a difference between Deputy Doke's knowledge of the use of hidden compartments and Smith's use of an unaltered car window. However, the inferential step from money hidden in door panels to money hidden in more ordinary places in a car is hardly unwarranted. *See, e.g.*, *United States v. McGilberry*, 620 F.3d 880, 882 (8th Cir. 2010) (noting that the defendants used cereal boxes to conceal money in a car during drug transactions); *United States v. Chavez*, 340 F. App'x 501, 505 (10th Cir. 2009) (unpublished decision) (involving a methamphetamine trafficker who intended to hide drug money in his child's car seat).

[7]Mr. Ewing contends that Deputy Doke's inference was misguided because he suspected only that Smith was a drug *user*, not that he was a drug *courier*. We cannot accept this contention. The officer certainly was entitled to conclude that, although drug users are not necessarily drug couriers, a drug user who travels around with a hidden stash of money looks very much like a drug courier, even if only a small-time one.

[8]That said, the evidence suggests that Deputy Doke's inference may not have been too far off the mark. After his arrest, Smith confessed that he

cumstances justified Deputy Doke's belief that they were and, thus, that there was a fair probability that a search of the car would yield evidence of criminal activity. *See id.* (finding probable cause to search a vehicle where police had evidence that the driver was part of a drug operation and could infer that contraband connected to that operation would be inside the vehicle).

Moreover, a separate search within the meaning of *Hicks* did not occur when Deputy Doke unfolded the bills. Because Deputy Doke had probable cause to search the car, he was permitted to seize and examine suspected contraband found within it. *Florida v. White*, 526 U.S. 559, 563-64 (1999). *Hicks* does not counsel a different result. Unlike the stereo equipment in *Hicks*, Mr. Ewing's money was within the scope of the search. Indeed, although the information that identified the bills as counterfeit was not apparent until the bills were unfolded, the money itself was the *central factor* justifying Deputy Doke's decision to search the car for evidence of drug trafficking. The Court in *Hicks* made abundantly clear that, if the officer had possessed probable cause to believe that the stereo equipment was stolen, his examination of it would have been sustained: "It would be absurd to say that an object could lawfully be seized and taken from the premises, but could not be moved for closer examination." *Hicks*, 480 U.S. at 326; *see also United States v. Wilson*, 565 F.3d 1059, 1065 (8th Cir. 2009) (upholding the review of videotapes for evidence of illegal activity and distinguishing *Hicks* "because the officers had probable cause to believe that the items were connected to criminal activity without viewing their contents"), *cert. denied*, 130 S. Ct. 1052 (2010). Deputy Doke therefore was justified in seizing the bills, which were suspected drug proceeds, and did not require any new or separate reason to examine them.

---

previously had used some bills counterfeited by Mr. Ewing to purchase methamphetamine and that, when Vera's car was pulled over, he was on his way "to get 'high' again." R.30-2 at 8.

## Conclusion

Accordingly, we affirm the judgment of the district court.

AFFIRMED.