**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-30104 |
| Plaintiff - Appellee, | D.C. No. 1:10-cr-00013-BLW |
| v. | |
| EDDIE RAY GRAHAM, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted April 11, 2012
Seattle, Washington

Before: HUG, D.W. NELSON, and CALLAHAN, Circuit Judges.

Eddie Ray Graham ("Graham") appeals the district court's order denying his

motion to suppress evidence found during two searches of the bedroom he shared

---

[*]   This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

with Gloria Snow ("Snow").[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts underlying this appeal, we do not recount them here.

We review de novo a district court's denial of a motion to suppress. *United States v. Ewing*, 638 F.3d 1226, 1229 (9th Cir. 2011). However, the district court's underlying factual findings are reviewed for clear error. *Id.* We also review for clear error a district court's determination of the voluntariness of a defendant's consent to a search. *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009). Whether someone is in custody for purposes of determining the voluntariness of consent to a search is a mixed question of law and fact reviewed de novo. *United States v. Cormier*, 220 F.3d 1103, 1110 (9th Cir. 2000). The district court's underlying factual findings, however, are reviewed for clear error. *Id.*

Although warrantless searches generally are impermissible under the Fourth and Fourteenth Amendments, one exception to the warrant requirement is for searches conducted pursuant to valid consent. *Schneckloth v. Bustamonte*, 412

---

[1]Following the court's denial of his motion to suppress, Graham entered a conditional guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), preserving his right to appeal the denial of the motion to suppress.

U.S. 218, 219 (1973).  Graham contends that Snow's consent[2] to the bedroom searches was not voluntary.

We consider five factors in determining voluntariness:

(1) whether the [consenting individual] was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given[3]; (4) whether the [consenting individual] was notified that she had a right not to consent; and (5) whether the [consenting individual] had been told a search warrant could be obtained.

*Brown*, 563 F.3d at 415 (quoting *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002)) (alterations in *Brown*).  No one factor is determinative.  *Id.*  Courts are to examine the totality of the circumstances[4] when determining whether consent to a search was voluntary or was coerced.  *Schneckloth,* 412 U.S. at 227.  Thus, a court may take into account any other factors it deems relevant.  *Liberal v. Estrada*, 632 F.3d 1064, 1082 (9th Cir. 2011).

---

[2]Graham also appears to rely on *Bumper v. North Carolina*, 391 U.S. 543 (1968), to argue that there was no consent because Snow merely acquiesced to a search that seemed inevitable due to the lawful probation search.  *Bumper* does not apply here because the officers never told Snow that the probation search gave them the right to search her bedroom.

[3]When the individual is not in custody, the fact that no *Miranda* warnings were given is inapposite. *United States v. Basher*, 629 F.3d 1161, 1168 (9th Cir. 2011).

[4]We have reviewed the entire record, including the tape recordings of the search.

*First Search*

The district court did not clearly err when it determined that Snow voluntarily consented to the first search of the bedroom. As an initial matter, the district court correctly decided that Snow was not in custody when she consented to the search.[5] Examining the totality of the circumstances, we are to determine whether the police conduct would have communicated to a reasonable person that she was not at liberty to ignore the police presence and go about her business. *See Brown*, 563 F.3d at 415. We conclude that the police conduct here would not have conveyed such an impression. The district judge was at the evidentiary hearing and was able to assess the credibility of Snow and Lopez when they testified about their telephone conversation. The court found that someone in Snow's position would not have interpreted the telephone conversation to mean that Lopez was attempting to detain Snow. This finding is not clearly erroneous. In addition, none of the officers displayed their weapons, the number of officers only slightly

_____

[5]Graham also claims that the district court erred by requiring that a person be a suspect or the object of an interrogation in order to qualify as being in custody. In fact, however, the district court did not state that there was such a requirement. Instead, the district court merely considered, as part of the totality of the circumstances, the fact that Snow knew she was not a suspect. Such reasoning is consistent with previous cases in which our custody analysis has taken into account the person's belief about whether he or she was facing an arrestable charge. *See, e.g., Brown*, 563 F.3d at 415; *United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004).

outnumbered the number of people in the home, and there is no evidence that the officers surrounded Snow or physically blocked her from leaving.[6] Although officers did not inform Snow of her right to leave, the Supreme Court has made it clear that this factor is not a critical or dispositive one. *See United States v. Mendenhall*, 446 U.S. 544, 555 (1980). Thus, we conclude that Snow was not in custody at the time of the first search.

Given the other factors and the totality of the circumstances, the district court did not clearly err when it held that Snow's consent to the first search was voluntary. Snow herself admitted at the evidentiary hearing that she had no problem with letting the officers look at the firearms. Furthermore, officers did not threaten Snow with a search warrant and the officers had their firearms holstered the entire time. Snow was not informed of the right to withhold consent. However, notification of the right to withhold consent is not required, and the absence of proof that the consenting individual "knew he could withhold his

---

[6]Graham also argues that Snow was indicating that she wished to leave when she mentioned to officers that her bedroom door was locked because they were getting ready to leave. However, a person's statement that she has plans to go somewhere does not prove that the person believed that she could not leave or that she was asking permission to leave. *Cf. United States v. Mendenhall*, 446 U.S. 544, 555, 559-60 (1980) (holding that woman was not seized and that consent was voluntary where woman told officer that she had a plane to catch, and concluding that court could view such a statement as an expression of concern that search be conducted quickly).

consent, though it may be a factor in the overall judgment, is not to be given controlling significance." *United States v. Watson*, 423 U.S. 411, 424 (1976); *see also Schneckloth*, 412 U.S. at 229-30; *United States v. Kim*, 25 F.3d 1426, 1432 (9th Cir. 1994).

*Second Search*

The district court also did not clearly err when it determined that Snow voluntarily consented[7] to the second search of the bedroom. First, Snow still was not in custody at the time of the second search. There were no critical changes in the circumstances between the first and second search. The fact that Graham may have been in custody at the time of the second search does not mean that Snow was in custody. *Cf. Brown*, 563 F.3d at 415 (holding that person giving consent was not in custody, although her companion was in custody). In addition, although Snow may not have had unfettered access to the firearms during the second search, that does not show she was in custody. *Cf. Basher*, 629 F.3d at 1167 (holding that defendant and son were not in custody where officers investigating reports of gunfire told them, in a non-threatening manner, to keep their hands in view).

---

[7]To the extent Graham claims that Snow did not consent at all, but instead was simply told that an officer would accompany her, a tape recording of the search reveals such a claim to be unfounded.

11-30104

Second, the other factors and circumstances also support a determination that Snow's consent to the search was voluntary. The only enumerated factor weighing in favor of finding the consent to be involuntary is the fact that officers did not explicitly inform Snow of the right to withhold consent. That one factor alone is insufficient to render the consent involuntary. *See Kim*, 25 F.3d at 1432. The officers still had their guns holstered and had not threatened to obtain a search warrant. In addition, although Snow witnessed the more heated exchanges between Graham and Sergeant Hoadley when Graham tried to assert rights he did not have, the officers' interactions with Snow continued to be polite and calm. There was no reason for Snow to believe that the officers would respond to her in an angry or threatening manner if she chose to exercise any rights she genuinely possessed.

Graham argues that Snow's actions in opening the bedroom door the second time were in response to Sergeant Hoadley's threats to take Graham to jail and that this created an inherently coercive situation. However, any threats to arrest Graham and put him in jail were not false or baseless, and therefore were not impermissibly coercive. *Cf. United States v. Patayan Soriano*, 361 F.3d 494, 504-05 (9th Cir. 2004) (amended) (recognizing that threatening to obtain a search warrant is not coercive where there is probable cause to justify a warrant).

Moreover, Snow did not testify that the threat of arrest or jail was the reason she unlocked the bedroom again. Rather, she testified that she unlocked the door because the officers had said that Graham could not exit the "office" area of the living room and Snow wanted Graham to be able to leave the room. Even assuming Snow believed that she was confronted with a choice between allowing the officers to search the bedroom again or having Graham restricted to the living room, that does not mean the officers coerced her consent. *Cf. United States v. Salvador*, 740 F.2d 752, 757 (9th Cir. 1984) (holding consent was voluntary where person was given option of either an immediate consensual search or staying in a motel while police secured the home and searched pursuant to a warrant the next morning); *see also Mendenhall,* 446 U.S. at 559 n.7; *Kim*, 25 F.3d at 1432 n.4.

**AFFIRMED**.