**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, v. TONY WILLIAMS, *Defendant-Appellee.* | No. 15-10008 D.C. No. 2:14-cr-00334-RFB-VCF-1 ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware, District Judge, Presiding

Argued and Submitted January 7, 2016
San Francisco, California

Filed September 20, 2016
Amended January 11, 2017

Before: J. Clifford Wallace and Alex Kozinski, Circuit
Judges and Robert H. Whaley,[*] Senior District Judge.

Order;
Opinion by Judge Wallace

---

[*] The Honorable Robert H. Whaley, Senior District Judge for the U.S. District Court for the Eastern District of Washington, sitting by designation.

## SUMMARY**

### Criminal Law

The panel filed (1) an order amending an opinion and denying a petition for panel rehearing and, on behalf of the court, a petition for rehearing en banc; and (2) an amended opinion reversing the district court's order granting a motion to suppress evidence of crack cocaine in the defendant's pockets and the firearm in his vehicle.

The panel held that police officers had reasonable suspicion to conduct an investigatory stop based on the information they possessed and the reliability of a telephone tip.

After the initial stop, the officers developed probable cause to arrest the defendant because he obstructed them in their attempt to enforce Nevada Revised Statute § 171.123, which dictates that police officers may detain a suspect whom the officers have reasonable suspicion has committed, is committing, or is about to commit a crime, in order to obtain that individual's identity.  The panel held that the government did not waive its argument that the officers had probable cause to arrest the defendant for violating § 171.123 where before the district court the government argued generally that the officers had probable cause to arrest him because he ran.  The panel held that the officers conducted a valid search incident to arrest when they searched the defendant's pockets and found crack cocaine.

---

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel further held that the officers lawfully searched the defendant's vehicle because, under the totality of the circumstances, they had probable cause to believe that it contained contraband or evidence of drug dealing.

The panel remanded the case for further proceedings.

## COUNSEL

Adam M. Flake (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Daniel G. Bogden, United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellant.

Amy B. Cleary (argued) and Eric J. Choi, Assistant Federal Public Defenders; Rene L. Vallardes, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Defendant-Appellee.

## ORDER

The opinion filed on September 20, 2016, and appearing at 837 F.3d 1016, is hereby amended. An amended opinion is filed concurrently with this order. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for rehearing and rehearing en banc is **DENIED**.

No further petitions for en banc or panel rehearing shall be permitted.

**OPINION**

WALLACE, Circuit Judge:

The government appeals from the district court's order granting Williams's motion to suppress evidence of the crack cocaine in his pockets and the firearm in his vehicle. We have jurisdiction pursuant to 18 U.S.C. § 3731, and we reverse.

I.

We review de novo an order granting a motion to suppress. *See United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004) (en banc). "A determination whether there was reasonable suspicion to support an investigatory 'stop and frisk' is a mixed question of law and fact, also reviewed de novo." *United States v. Burkett*, 612 F.3d 1103, 1106 (9th Cir. 2010). The district court's factual findings are reviewed for clear error. *Crawford*, 372 F.3d at 1053 (citing *United States v. Hammett*, 236 F.3d 1054, 1057–58 (9th Cir. 2001)).

II.

At 4:40 a.m., a person who identified himself as Tony Jones telephoned a Las Vegas police hotline to report an adult, black male sleeping inside a grey Ford Five Hundred car. Jones reported that the man was "known to sell drugs in the area," did not live in the adjacent apartment complex, and Jones expressed that he "just wanted the person moved out of the area." Jones provided the operator with his phone number and address.

The Las Vegas Metropolitan Police Department (Metro) dispatched two officers on duty in the reported area, Alvin

Hubbard and Thomas Keller. Hubbard and Keller were on patrol in a marked Metro patrol car, with Hubbard driving. When Hubbard and Keller arrived at the apartment complex the caller had identified, they saw a grey Ford Five Hundred car in the parking lot. The Ford had temporary license plates, preventing the officers from securing an initial vehicle check.

The Ford was flanked by a car on either side and a parking curb in front. Hubbard stopped the patrol car behind the grey Ford, blocking its exit. The officers turned on their overhead lights, "take-down" lights, and spotlights, shining them into the Ford's windows. After the officers turned on their lights, a black male, later identified as defendant Tony Williams, sat up in the driver's seat inside the Ford. Williams looked to his left and right, then started his car. Williams momentarily placed the car in reverse and then quickly shifted the car back into park.

By the time Williams started the car, both officers were approaching the Ford on foot. Hubbard approached the car on the driver's side, while Keller approached on the passenger's side with his handgun drawn. Hubbard yelled at Williams through the Ford's closed windows to turn off the engine and exit the vehicle.

Williams complied and got out of the car. Hubbard continued walking towards Williams, until he was within three to four feet of him. Williams, without saying a word, ran. He ran toward the front of the Ford and around the other cars in the parking lot.

Keller ran after Williams on foot, and Hubbard joined the pursuit in the patrol car. The pursuit lasted approximately one minute. Two or three buildings away from the parking lot,

Williams fell and did not get up. He remained on the ground where he had fallen with his hands out. Keller approached with his gun drawn and stood over Williams. Hubbard arrived shortly after in the patrol car, observed Williams prone on the ground, performed a protective sweep of his backside, and handcuffed him.

Hubbard then did a pat down of Williams's backside. Hubbard then helped Williams from the ground and brought him to the front of the patrol vehicle. At that point, Hubbard did a pat down of Williams's front. He proceeded to reach into all of Williams's pants' pockets. In the right front pocket, Hubbard found a plastic bag containing crack cocaine. In the left front pocket, Hubbard found $1,165.00.

Hubbard placed Williams in the back of the patrol car and drove back to the parking lot where the Ford was still parked. With Williams handcuffed in the back of the patrol car, Hubbard began searching the Ford. Hubbard discovered that the Ford was not registered to Williams but rather to a company named Rodo. The officers never telephoned the company, nor made a call to Metro dispatch to have the vehicle towed or impounded.

As Hubbard searched the car, he found pots, pans, food, and utensils. In the back seat, he found a purse; when he unzipped it, he found a gun inside. Hubbard placed the purse on the hood of the patrol car and contacted his sergeant, who called for a detective from the firearms unit.

On October 8, 2014, a federal grand jury in Nevada returned an indictment against Williams for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a). The grand jury returned a superseding indictment

on December 10, 2014, adding charges for violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) by possessing a controlled substance with intent to distribute, and 18 U.S.C. § 924(c)(1)(A)(i) by possessing a firearm in furtherance of a drug trafficking offense. Williams moved to suppress the evidence of the crack cocaine and handgun found during the search of Williams and the Ford. The district court granted the motion, and the government now appeals.

## III.

The government challenges the district court's suppression of the evidence on the grounds that (1) the officers had reasonable suspicion to conduct an investigatory stop; (2) after the initial stop, the officers developed probable cause to arrest Williams and perform a search incident to a lawful arrest; and (3) the officers had probable cause to search Williams's vehicle.

## A.

The government first argues that the district court erred in concluding that the officers lacked reasonable suspicion to conduct an investigatory stop. The Fourth Amendment permits brief investigative stops when a law enforcement officer has reasonable suspicion that the person stopped is engaged in criminal activity. *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014). Reasonable suspicion requires more than a mere "hunch" of wrongdoing, but the degree of proof needed is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citations and internal quotation marks omitted). Whether reasonable suspicion

exists depends upon the totality of the circumstances surrounding the stop, including "both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990); *see also Navarette*, 134 S. Ct. at 1687.

In assessing the role of telephone tips in investigative stops, the Supreme Court and our court have focused on whether the tips have "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." *White*, 496 U.S. at 327; *United States v. Edwards*, 761 F.3d 977, 983 (9th Cir. 2014). In *White*, an anonymous tipster telephoned police to report that the defendant would be leaving a particular apartment at a particular time in a particular vehicle, and that the defendant would be heading towards a specific motel in possession of cocaine. 496 U.S. at 327. The police went to the identified apartment, saw a vehicle matching the description, and pursued the vehicle as it made its way to the specified motel. *Id*. Officers stopped the vehicle just short of the motel and discovered marijuana and cocaine inside. *Id*. The Court held that the anonymous tip "exhibited sufficient indicia of reliability to justify the investigatory stop" because the anonymous tipster predicted the defendant's future behavior and the officers corroborated the tip through independent police work. *Id*. at 330–32.

The Supreme Court further clarified the factors used in assessing the reliability of tips in *Navarette*. There, an unidentified 911 caller reported that a truck ran her off the road. 134 S. Ct. at 1686–87. A police officer responded to the 911 broadcast, located the truck, and pulled it over. *Id*. at 1687. Officers smelled marijuana when they approached the truck and a subsequent search uncovered 30 pounds of marijuana. *Id*. The Court held that the 911 call had sufficient

indicia of reliability to provide the officers with reasonable suspicion that the truck ran the caller off the roadway, reasoning that (1) the tip indicated that the caller had eyewitness knowledge of the incident, "lend[ing] significant support to the tip's reliability," *id*. at 1689; (2) police corroborated the tip by verifying the truck's location near where the caller stated the incident occurred, *id*.; (3) the caller used the 911 system, which identifies and traces callers, thus increasing the tip's veracity by "provid[ing] some safeguards against making false reports with immunity," *id*. at 1689–90; and (4) the caller reported a specific and potentially ongoing crime. *Id*. at 1690.

Applying the principles articulated in *White* and *Navarette*, we hold that officers Hubbard and Keller had reasonable suspicion to stop Williams based on the information they possessed and the tip's reliability. First, the tipster, Tony Jones, telephoned a police hotline and provided his name, address, and phone number. Second, the officers verified the information Jones relayed through independent observation. Jones provided officers with Williams's location and the make of Williams's car. When the officers arrived at the specified parking lot, they found the reported grey Ford Five Hundred with a man inside. Third, Jones provided specific criminal allegations. Jones reported that Williams was sleeping in a car in an adjacent apartment complex, even though Williams did not live there. Jones also reported that Williams was known to sell drugs in the area.

Fourth, the officers' suspicion was increased when they witnessed Williams's behavior upon arriving at the parking lot. When the officers shone the light on Williams's car, he popped up in the driver's seat and immediately looked left and right. Williams then proceeded to place the car in reverse.

The officers testified that this conduct was consistent with someone who intended to flee the scene. Lastly, the incident occurred in a high-crime area around 5:00 a.m. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (Although "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," police can consider the "relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation"). The officers testified that they were aware of gang activities in the area, and often responded to domestic violence and "party calls" there.

Williams's reliance on *Florida v. J.L.*, 529 U.S. 266 (2000), is unpersuasive. In *J.L.*, an anonymous caller told police "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id*. at 268. Police went to the bus stop, frisked a young black male in plaid, and seized a gun from his pocket. *Id*. The Court held that the police lacked reasonable suspicion to stop the suspect, reasoning that the call "provided no predictive information," leaving the "police without means to test the informant's knowledge or credibility." *Id*. at 271. The tip also failed to allege more than "[a]n accurate description of a subject's readily observable location and appearance," and did not show how the tipster had knowledge of the alleged "concealed criminal activity." *Id*. at 272.

By contrast, the tip in this case not only provided an accurate description of the suspect, but it also alleged ongoing, observable criminal activity—a potential trespass. Jones identified Williams's location, car, and appearance and also stated that Williams was sleeping in a car in an adjacent

apartment building's lot, even though Williams did not live there. Unlike the concealed criminal activity alleged in *J.L.*, Jones provided predictive information concerning Williams's activity, which the officers were able to immediately verify when they arrived.

Even if there were a question as to whether the tip, on its own, provided the officers with the requisite reasonable suspicion to detain Williams, the tip was certainly sufficient to justify further investigation. After receiving the information provided by the tipster, the officers would have been delinquent had they not driven over to the parking lot to investigate the situation. The officers testified at the evidentiary hearing that the reported conduct, if confirmed, would be indicative of a potential DUI, as well as loitering or trespassing. When they arrived, the officers faced a potentially dangerous situation. They encountered a possible drug dealer, sitting in a car with temporary license plates, in a dark and deserted parking lot, in a high-crime area, during the early hours of the morning. Accordingly, the officers acted reasonably when they blocked in the driver with their police car, turned on their police lights, and one of the officers drew his gun. These actions led to Williams's subsequent suspicious conduct, which included placing his car in reverse, ignoring the officers' commands, and ultimately darting away on foot.

Based on the totality of the circumstances surrounding the stop, the officers had reasonable suspicion to briefly detain Williams, and the district court erred in concluding otherwise.

B.

1.

The government contends that the officers had probable cause to arrest Williams because he obstructed the officers in their attempt to enforce Nevada Revised Statute (N.R.S.) § 171.123. Section 171.123 dictates that police officers may detain a suspect whom the officers have reasonable suspicion has committed, is committing, or is about to commit a crime, in order to obtain that individual's identity.[1] When the suspect fails to identify himself after officers have detained him under reasonable suspicion, the suspect violates N.R.S. § 199.280 (Nevada's obstruction statute), which makes it unlawful for a person to "willfully resist[], delay[] or obstruct[] a public officer in discharging or attempting to discharge any legal duty of his or her office."

As explained above, the officers had reasonable suspicion to conduct an investigatory stop: a caller reported that Williams was sleeping in his car outside of an apartment building that Williams did not live in; the caller reported that he knew Williams to be a drug dealer; Williams acted as if he intended to flee when officers approached him; and the conduct occurred in a high-crime area early in the morning. Accordingly, the officers had reasonable suspicion to stop Williams and, pursuant to section 171.123, could approach

---

[1] N.R.S. § 171.123(1) and (3) provide: "Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime. . . . The officer may detain the person pursuant to this section only to ascertain the person's identity and the suspicious circumstances surrounding the person's presence . . . ."

Williams to ascertain his identity. Instead of speaking with the officers, Williams immediately ran, preventing the officers from discharging their duty under section 171.123 and, accordingly, violating Nevada's obstruction statute.

In holding that the officers lacked probable cause to arrest Williams, the district court concluded that simply fleeing from an officer, while it establishes reasonable suspicion, does not establish probable cause that the individual violated Nevada's obstruction statute. *See United States v. Smith*, 633 F.3d 889, 893 (9th Cir. 2011) ("[A] person's 'headlong,' 'unprovoked' flight upon seeing a police officer, when it occurs in a high-crime neighborhood, is sufficient to establish reasonable suspicion that the person is involved in criminal activity.") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000)). The district court, however, ignored the interplay between section 171.123 and Nevada's obstruction statute. The officers did not have probable cause to arrest Williams on the basis of the obstruction statute alone; rather, the officers had probable cause to effectuate an arrest because Williams obstructed officers in their efforts to enforce section 171.123.

Williams nevertheless contends that the government waived its argument that the officers had probable cause to arrest him for violating N.R.S. § 171.123. Before the district court, the government argued that the officers had probable cause to arrest Williams; however, the government failed to specify that the officers had probable cause to arrest Williams because he violated N.R.S. § 171.123, and the district court never addressed that statute.

Our court applies "a 'general rule' against entertaining arguments on appeal that were not presented or developed

before the district court." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1321 (9th Cir. 1998) (citation omitted). However, we have made it clear that "it is claims that are deemed waived or forfeited, not arguments." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004); *see Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995). Specifically, "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

Our court's opinion in *United Sates v. Guzman-Padilla*, 573 F.3d 865 (9th Cir. 2009), is instructive. In *Guzman-Padilla*, the defendant moved to suppress evidence of 479.95 kilograms of marijuana that border patrol agents seized when the defendant crossed the Mexican-American border. *Id*. at 874–76. Before the district court, the government argued generally that the agents' seizure of the defendant's vehicle did not require probable cause. *Id*. at 873, 877 n.1. On appeal, the government argued more specifically that the agents did not need probable cause to seize the defendant's vehicle because of the border search exception to the Fourth Amendment. *Id*. at 874, 877 n.1. Our court held that, because the government had advanced its probable cause argument before the district court, it was not circumscribed from advancing a more specific argument in support of its theory. *Id*. at 877 n.1.

The situation in our present case is nearly identical to *Guzman-Padilla*. Before the district court, the government argued generally that the officers had probable cause to arrest Williams because he ran. On appeal, the government argued more specifically that the officers had probable cause to arrest

Williams for violating N.R.S. § 171.123 when he ran. The government, having advanced its probable cause theory before the district court, is able to make a more precise argument on appeal as to why the officers had probable cause.

2.

Because the officers lawfully arrested Williams, the government contends that the officers conducted a valid search incident to arrest when they searched Williams's pockets and found crack cocaine. The Supreme Court and our court have already held that a search incident to a lawful arrest is not limited to simple pat-down of the suspect and can "involve a relatively extensive exploration" of the areas within the arrestee's immediate control. *United States v. Robinson*, 414 U.S. 218, 227 (1973) (internal quotation marks omitted); *see also United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010). Those areas include the arrestee's person and the inside pockets of the arrestee's clothing. *See Robinson*, 414 U.S. at 224–25. Here, the officers had probable cause to arrest Williams and performed a valid search incident to arrest of Williams's person—which lawfully extended to the insides of Williams's pockets—after apprehending Williams for obstruction.

C.

Lastly, the government contends that the officers lawfully searched Williams's vehicle because they had probable cause

to believe the Ford contained contraband or evidence of drug dealing.[2]

Officers may conduct a warrantless search of an automobile, including containers within it, when they have probable cause to believe that the vehicle contains contraband or evidence of criminal activity. *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011); *see Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) ("When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one"). Probable cause exists when, based on the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Under the totality of the circumstances, the officers had probable cause to believe that evidence of contraband would be found in Williams's vehicle. Before arriving on the scene, the officers received information from Metro dispatch that Williams was sleeping in his car in an unauthorized location and was known to deal drugs in the area. Moreover, the officers approached the vehicle early in the morning—around 5:00 a.m.—and were in a high-crime neighborhood. When officers approached the vehicle, Williams popped up, looked around, and temporarily placed the car in reverse. After Williams got out of the vehicle, he immediately fled the scene. Officers caught Williams after he tripped and fell to

---

[2] The government also argues that the officers legally searched the vehicle as a search incident to a lawful arrest. Because we hold that the officers had probable cause to search the vehicle, we do not address the government's alternative argument.

the ground. In searching Williams's person after effectuating a lawful arrest, Hubbard found individually wrapped crack cocaine in plastic containers. He also found $1,165.00 in cash in small denominations. Based on the information the officers had prior to making the arrest—and the contraband they found during the arrest—the officers had probable cause to believe that the vehicle which Williams had only just fled contained further contraband or other evidence of drug dealing.

Williams argues that because the officers arrested him for "obstructing by running," there is no conceivable evidence related to the obstruction charge that the officers could find in the vehicle. Williams ignores the evidence which emerged as soon as the officers conducted a lawful search incident to arrest: the individually wrapped packages of crack cocaine in his pockets. The crack cocaine provided the officers with the probable cause necessary to arrest Williams for drug possession and drug dealing, two crimes in which a vehicle could reasonably contain further evidence.

Williams also contends that the government waived its right to argue on appeal that the officers had probable cause to search his vehicle because it failed to raise the argument with the district court. Williams's argument fails: the district court considered whether the officers had probable cause to conduct a warrantless search of Williams's vehicle and held that the police had none. Our court does not deem an issue waived "if the district court actually considered it." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007) (citing *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 n.1 (9th Cir. 1991)).

IV.

In conclusion, the district court erred in concluding that the officers lacked reasonable suspicion to detain Williams; lacked probable cause to arrest Williams; unlawfully performed a search incident to arrest; and lacked probable cause to conduct a warrantless search of Williams vehicle. We therefore reverse and remand for proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.