**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 19 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10128 |
| Plaintiff-Appellee, | D.C. No. 2:18-cr-00029-JCM-VCF-1 |
| v. | |
| DWAYNE MARTIN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted February 17, 2022
San Francisco, California

Before: GOULD and RAWLINSON, Circuit Judges, and ZIPPS,** District Judge.

Appellant Dwayne Martin appeals the denial of his motion to suppress and

two conditions of his supervised release. We have jurisdiction pursuant to 28

U.S.C. § 1291 and 18 U.S.C. § 3742. Because we reverse the denial of the motion

to suppress and Martin's conviction, we do not address Martin's challenges to the

---

*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**     The Honorable Jennifer G. Zipps, United States District Judge for the District of Arizona, sitting by designation.

conditions of supervision.

We review the district court's denial of a motion to suppress *de novo* and its factual findings for clear error. *United States v. Ewing*, 638 F.3d 1226, 1229 (9th Cir. 2011). We conclude that the district court erred in denying Martin's motion to suppress the gun that was found in his bedroom at the Cormacks' apartment.

The knock-and-talk exception did not permit the officers' warrantless entry into the Cormacks' residence or onto the curtilage. In finding that the exception applied, the district court erred in focusing solely on the officers' investigatory purpose in approaching the Cormacks' apartment. The officers' investigative purpose is a "core inquiry" in determining the application of the knock and talk exception, but it is not the only one.

The knock-and-talk exception permits police "to encroach upon the curtilage of a home, for the purpose of asking questions of the occupants." *United States v. Lundin,* 817 F.3d 1158,1158 (9th Cir. 2016) (cleaned up). The exception is based on the theory of implied consent: a resident's consent is implied from the custom of treating the "knocker on the front door" as an invitation (*i.e.,* license) to approach the home and knock. *Id.* (quoting *Fla. v. Jardines*, 569 U.S. 1, 8 (2013)). "The constitutionality of such entries … hinges on whether the officer's actions are consistent with an attempt to initiate consensual contact with the occupants." *United States v. Perea–Rey,* 680 F.3d 1179, 1188 (9th Cir. 2012).

The officers' actions here are not consistent with a knock and talk. The body cam footage showed that six officers approached the Cormacks' apartment and positioned themselves around the front entrance of the apartment, three of the officers with their guns drawn and pointed at the front window and door. One of the officers positioned by the door knocked as a second officer yelled, "Open the door!" The officer in front of the door kept his gun pointed at the door until the door opened and he saw Ms. Cormack. The officer then lowered his gun, but he did not put it in the holster. An officer asked if Martin was in the apartment. When Ms. Cormack answered that he was, another officer told her, "We are going to need you to come out." *See United States v. Chan-Jiminez*, 125 F.3d 1324, 1327 (9th Cir. 1997) (noting that consent was not voluntary when officer's request for permission to search was made "with one hand resting on [the officer's] gun"); *United States v. Marshall,* 488 F.2d 1169, 1189 (9th Cir. 1973) (concluding that any consent to search was "in response to an overwhelming display of authority under the compulsion of the badge and the guns" and not voluntary).

The illegal search occasioned by the knock and talk is not saved by the consent exception. The government bears the burden of proving voluntary consent and we consider five factors and the totality of the circumstances in evaluating voluntariness. *See United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009).

The body cam footage refutes the government's argument that, although the

officers' initial contact with Ms. Cormack may have been tense, the officers immediately deescalated the situation upon Ms. Cormack's opening of the door. Ms. Cormack was not in custody, but there was nowhere for her to go. The only entrance to the second-story apartment was blocked by the officers who were displaying weapons, first pointing them at the door, then, after Ms. Cormack opened the door, lowering, but not re-holstering them. The officers did not ask Ms. Cormack if she wanted to talk to them, and Ms. Cormack asked for permission to enter her own apartment to wake Martin in response to the officers' directive that she get Martin. *See United States v. Winsor*, 846 F.2d 1569, 1573 n.3 (9th Cir. 1988) (finding compliance with police demand to open door is not voluntary consent). When officers entered the apartment, they continued to display their weapons, holding them at their sides, and three officers entered, not just the one who had asked for permission to enter. Ms. Cormack's subsequent comments also show that the interaction was not consensual; she told the officers how upset she was with the manner in which they had approached the apartment.

The officers' impermissible conduct resulted in them learning that Martin was living at the apartment—information that established the nexus between the apartment and the crimes being investigated. The officers relied on this information to obtain a search warrant. The affidavit in support of the warrant stated that Martin was found in his bedroom at the apartment during the knock and

talk, and that the officers froze the apartment pending application for a search warrant. Excising the illegally-obtained evidence from the warrant, the remaining "untainted evidence" fails to demonstrate a "fair probability" that Martin's gun or "evidence of a crime" would be found at the apartment, as required for the issuance of a warrant. *See United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014). Consequently, the warrant cannot stand, and the gun found during the execution of the warrant must be suppressed.

**REVERSED AND REMANDED.**